UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
DIVISION

| | |
|---|---|
| TERRY MOSER, Individually and for Others Similarly Situated, | Case No. 4:17-861 |
| v. | Collective Action |
| MORAN POLLUTION & SAFETY CORP. and MORAN SHIPPING AGENCIES, INC. | |

# COMPLAINT

## SUMMARY

1. Moran Pollution & Safety Corp. and Moran Shipping Agencies, Inc. (collectively, Moran) failed to pay certain hourly employees overtime as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA).

2. Instead, Moran paid these workers the same hourly rate for both non-overtime and overtime hours.

3. Because Moran's "straight time for overtime" payroll practice violates the FLSA, Moser brings this collective action to recover unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

4. This Court has federal question subject matter jurisdiction. *See* 28 U.S.C. § 1331 & 29 U.S.C. § 216(b).

5. Venue is proper because Moran does business in this District and Division.

6. Moser performed the bulk of his work for Moran in this District and Division.

7. Moran maintains an office at 16651 Ronan Road, Houston, TX 77060.

1

8. Moser's supervisors were employed by Moran out of its Houston office.

9. A substantial part of the events alleged herein, such as the unpaid overtime being worked, occurred in this District and Division. *See* 28 U.S.C. §§ 1391 (b) & (c).

## PARTIES

10. Moser was a "dockwalker" employed and/or jointly employed by Moran within three years of filing this lawsuit.

11. Moser's written consent is attached.

12. Moser brings this action on behalf of himself and all other similarly situated dockwalkers who Moran paid at straight time rates for overtime worked.

13. These employees are collectively referred to herein as the "Class Members."

14. Moran Pollution & Safety Corp. is a Rhode Island corporation.

15. Moran Pollution & Safety Corp. is an affiliated company of Moran Shipping Agencies.

16. Moran Pollution & Safety Corp. manages Moran Shipping Agencies' "Dock Walker program" of Moran Shipping Agencies.

17. Morgan Shipping Agencies is a Rhode Island company that operates, individually and through Moran Pollution & Safety Corp., in ports around the United States.[1]

18. Among other things, Moran Pollution & Safety Corp. and Moran Shipping Agencies share employees, offices, officers, personnel information, policies, revenue, and a website (www.moranshipping.com).

---

[1] http://www.moranshipping.com/portserviced.html

19. Moran Shipping Agencies and Moran Pollution & Safety Corp. share common control over the dockwalkers' schedules and pay.

20. Moran Shipping Agencies and Moran Pollution & Safety Corp., together with their clients, jointly hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to Moser and the Class Members.

21. Moran Shipping Agencies and Moran Pollution & Safety Corp. each individually employed, and together jointly employed, Moser and the Class Members.

22. In each of the past 3 years, Moran's annual gross revenues have exceeded $5 million.

23. In each of the past three years, Moran employed dozens of individuals that routinely handled goods or materials – such as phones, computers, and tools – that moved in, or were produced for, interstate commerce.

24. Moran constitutes a "covered enterprise" within the meaning of the FLSA.

## FACTS

25. Moran operates in more than 10 states across the country.

26. Moser worked for Moran in Texas (with one short stint in Louisiana) from approximately January 1, 2013 to approximately March 30, 2016.

27. Moran employed Moser as a dockwalker.

28. As implied by the job title, a dockwalker is employed on docks at shipping ports.

29. A dockwalker is not assigned to a vessel.

30. A dockwalker is not a member of any vessel's crew.

31. A dockwalker monitors barges in port operations.

32. Moran provides dockwalkers with a "Barge Inspection Report" which outlines the information dockwalkers are required to collect.

33. Moser reported to a Moran supervisor known as "Queenie."

34. Queenie set the dockwalkers' (including Moser's) schedules.

35. Queenie set the dockwalkers' schedules with input from Moran's clients.

36. Indeed, Moran's client exerted significant control over Moser's and other dockwalkers's schedules.

37. Throughout his employment, Moser worked exclusively for one of Moran's clients.

38. Moran's client performed functions of an employer, such as effectively setting the pay rate for Moser.

39. Moran's client effectively setting the pay rate for other dockwalkers too.

40. Moran pays dockwalkers by the hour.

41. This hourly rate varies depending on the specific type of work being performed.

42. For example, orientation time is typically paid at a lower rate than the "regular hourly" rate.

43. In addition, Moran pays more (but less than time and a half) for hours worked in excess of 12 hours in a day.

44. Moran did not pay Moser and the Class Members at one and one-half times their regular hourly rates for hours worked in excess of 40 in a workweek.

45. In general, Moran pays the same hourly rate for hours worked in excess of 40 in a workweek as it does for hours below 40.

46. For example, if Moser was earning $33/hr for hour 39 in a workweek, he will receive $33 an hour for hours 41-48.

47. Dockwalkers typically work 12+ hour shifts, on a 4-days on 4-days off schedule.

48. Thus dockwalkers, including Moser, regularly work more than 40 hours a week.

49. However, dockwalkers, including Moser, often work more.

50. Moser's typical schedule was at least 48 hours a week.

51. Moran's records reflect the number of hours dockwalkers, including Moser, work each day.

52. Moran's records reflect the number of hours dockwalkers, including Moser, work each week.

53. Each of the defendants maintain employment records on Moser and the Class Members, and can terminate their employment.

54. Moran knew Moser and the Class Members routinely worked more than 40 hours in a week.

55. Again, Moran's records show the hours worked by the dockwalkers each day, as well as each week.

56. It is well established that hourly workers – like Moser and the Class Members – are not exempt from the overtime provisions of the FLSA.

57. Moran knew Moser and the Class Members were not exempt from the FLSA's overtime provisions (or the provisions of any similar state overtime laws).

58. Moran knew Moser and the Class Members were paid by the hour and that they were paid straight time for overtime hours.

59. Moran received complaints about their failure to pay overtime, but failed to correct their payroll policy.

## COLLECTIVE ALLEGATIONS

60. Moran's policy of paying non-exempt workers by the hour, but without paying time and a half for hours over 40 in a workweek, violates the FLSA.

61. All of the dockwalkers perform essentially the same job duties.

62. All of the dockwalkers monitor barges in port operations.

63. All of the dockwalkers work under the same policies

64. Moran's policy of paying essentially the same hourly rate, including those over 40 in a week, affects Moser and the Class Members in a similar manner.

65. Accordingly, Moser and the Class Members are similarly situated for the purposes of their overtime claims.

## CAUSE OF ACTION – VIOLATION OF THE FLSA

66. By failing to pay Moser and the Class Members overtime at one-and-one-half times their regular rates, Moran violated the FLSA's overtime provisions.

67. Moran owes Moser and the Class Members the difference between the rate actually paid and the proper overtime rate for all overtime hours worked.

68. Because Moran knew, or showed reckless disregard for whether, its pay practices violated the FLSA, it owes these wages for at least the past three years.

69. Moran also owes Moser and the Class Members an amount equal to the unpaid overtime wages as liquidated damages.

70. Moser and the Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## PRAYER

Wherefore, Moser prays for relief as follows:

1. An order allowing this action to proceed as a representative collective action under the FLSA;

2. Judgment awarding Moser and the Class Members all unpaid overtime compensation, liquidated damages, attorneys' fees, costs, and expenses under the FLSA;

3. A declaration that Moran violated the FLSA;

4. A service award for Moser as permitted by law;

5. Pre- and post-judgment interest at the highest rate allowable by law; and

6. All such other and further relief to which Moser and the Class Members may show themselves to be justly entitled.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: ___/s/ Rex Burch_____
Richard J. (Rex) Burch
Texas Bar No. 24001807
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
(713) 877-8788 – Telephone
(713) 877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

## CONSENT TO JOIN WAGE CLAIM

Print Name: TERRY LOUIS MOSER

1. I hereby consent to participate in a collective action lawsuit against **Moran Transportation Industries d/b/a Moran Pollution & Safety Corp., and Moran Shipping Agencies, Inc.** (and its related entities) to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at BRUCKNER BURCH PLLC as my attorneys to prosecute my wage claims.

4. I authorize the law firm and attorneys at BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: /s/ T. Moser        Date Signed: 02-16-17